**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SAIC INC. DERIVATIVE LITIGATION<br><br>This document Relates to:<br><br><br>  ALL ACTIONS | Master File No. 1:12-CV-02437-JPO |

**DEFENDANT KENNETH C. DAHLBERG'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS THE VERIFIED CONSOLIDATED SHAREHOLDER
<u>DERIVATIVE COMPLAINT</u>**

Lloyd Winawer
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
Tel:  (650) 752-3100
Fax:  (650) 853-1038
<u>lwinawer@goodwinprocter.com</u>

Mark Holland
Mary K. Dulka
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 813-8800
Fax:  (212) 355-3333
<u>mholland@goodwinprocter.com</u>
<u>mdulka@goodwinprocter.com</u>

*Attorneys for Defendant Kenneth C. Dahlberg*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT ........................................................................................................................6

I.      PLAINTIFFS HAVE NOT STATED BREACH OF DUTY CLAIMS AGAINST
MR. DAHLBERG.......................................................................................................7

        A.     Plaintiffs Have Pleaded No Facts Establishing that Mr. Dahlberg
Deliberately or Recklessly Made a Materially False Statement (Count I). .............7

        B.     Plaintiffs Fail to State Breach of Fiduciary Duty Claims Against Mr.
Dahlberg for Failure to Maintain Internal Controls and Exercise Proper
Oversight (Counts II and III). ..............................................................13

II.     PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL (COUNTS IV-VI) ...........15

III.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER SECTION 14(a) OF
THE EXCHANGE ACT (COUNT VII)........................................................................18

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................6

*City of Roseville Emps. Ret. Sys. v. Crain*, No. 11-2919 (JLL), 2011 WL 5042061 (D.N.J.
     Oct. 24, 2011) ............................................................................................................17

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004)..................................................................15

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)....................................................................6

*In re ALH Holdings, LLC*, 675 F. Supp. 2d 462, 482–83 (D. Del. 2009) ....................17

*In re Bank of Am. Corp. Sec. Deriv. and ERISA Litig.*, 757 F. Supp. 2d 260 (S.D.N.Y.
     2010) .....................................................................................................................7, 9

*In re BH S & B Holdings LLC*, 420 B.R. 112 (Bankr. S.D.N.Y. 2009).......................3, 8

*In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011) ...........................................3

*In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502 (S.D.N.Y. 2008) .....................13, 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006)..............14

*In re Pfizer Inc. S'holder Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010)........................16

*King v. Baldino*, 648 F. Supp. 2d 609 (D. Del. 2009)....................................................15

*Marino v. Groupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601 (S.D.N.Y. 2011) ......................7

*Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 424 B.R. 95
     (Bankr. S.D.N.Y. 2010) ...............................................................................................7

*Richardson v. U.S. News & World Report, Inc.*, 639 F. Supp. 595 (D.D.C. 1986) ......................15

*Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435 (S.D.N.Y. 2012)....................................2

*Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599 (S.D.N.Y. 2010) .......................14

*Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562 (S.D.N.Y. 2011).................14

*THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422 (KMW), 1998 WL 50202 (S.D.N.Y.
     Feb. 6, 1998) ................................................................................................................8

OTHER CASES

*Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. C.A. 04C-05-250 PLA, C.A. 04C-05-251 PLA, 2004 WL 2050527, at *6 (Del. Super. Ct. Sept. 15, 2004) ...........................................17

*Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270 (Del. 1994) .....................................8

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ...........................................13, 14

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ..............................................13

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...........................13, 14

*In re Celera Corp. S'holder Litig.*, C.A. No. 6304-VCP, 2012 WL 1020471 (Del. Ch. Mar. 23, 2012).....................................................................................8

*In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009).........................8, 13, 17

*In re Lear Corp. S'holder Litig.*, 967 A.2d 640 (Del. Ch. 2008)....................................9

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) .............................................8

*MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271 (Del. Ch. May 5, 2010)........16

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121 (Del. Ch. 2004)...........................................................................8, 17

*Nemec v. Shrader*, 991 A.2d 1120 (Del. 2010).............................................16

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ...............................................8, 13

*Tomczak v. Morton Thiokol, Inc.*, CIV. A. No. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990) ..............................................................................9

*U.S. Cellular Inv. Co. v. Bell Atl. Mobile Sys., Inc.* 677 A.2d 497 (Del. 1996)............................11

FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Fed. R. Civ. P. 4(m) ...................................................................2

Fed. R. Civ. P. 8(a)(2)...............................................................1, 9

Fed. R. Civ. P. 9(b) ...............................................................1, 7, 9

Fed. R. Civ. P. 12(b)(5).............................................................1, 2

Fed. R. Civ. P. 12(b)(6).................................................................1

Fed. R. Civ. P. 23.1.....................................................................1

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)........................1

Sarbanes-Oxley Act of 2002 ............................................................................... 6, 10, 11

Securities Exchange Act of 1934 § 14(a) ........................................................... 6, 7, 18

**OTHER: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Delaware General Corporation Law § 102(b)(7) .......................................................... 8

Defendant Kenneth C. Dahlberg submits this memorandum of law in support of his Motion to Dismiss the Verified Consolidated Shareholder Derivative Complaint ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 8(a)(2), 9(b), 12(b)(5), 12(b)(6), and 23.1, and the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA"), 15 U.S.C. § 78u-4(b). Mr. Dahlberg joins in and incorporates by reference the briefs submitted in support of the motions to dismiss filed by SAIC, Inc., the Director Defendants, and Mark A. Sopp.

## PRELIMINARY STATEMENT

Plaintiffs, alleged shareholders of SAIC, Inc. ("SAIC" or "Company"), purportedly filed this shareholder derivative action "for the benefit of SAIC" without first making a demand upon the Company's Board of Directors.  As nominal defendant SAIC's motion establishes, that failure alone requires dismissal of Plaintiffs' entire Complaint under Fed. R. Civ. P. 23.1 and Delaware law.  SAIC's motion is dispositive, and the Court need not go any further.

This motion addresses separate and independent grounds for dismissal of the claims alleged against Kenneth Dahlberg, SAIC's former Chief Executive Officer and Chairman of the Board of Directors.  In sum, Plaintiffs have pleaded no facts indicating that Mr. Dahlberg had any knowledge of or involvement with the "CityTime" scheme alleged in the Complaint.  To the contrary, Plaintiffs' contention that Mr. Dahlberg was "on notice" of billing irregularities related to this project is belied by the very public documents upon which Plaintiffs rely, which detail the extraordinary lengths to which the alleged CityTime conspirators went to hide their tracks and the supervisory failures of certain personnel tasked with direct responsibility for the project, including their failure to bring complaints and concerns "to the attention of SAIC's Board of Directors" or "the proper Company personnel for investigation."

Plaintiffs allege claims against Mr. Dahlberg for breach of fiduciary duty and related state and federal causes of action.  Under Delaware law, which applies here, claims that corporate

officials breached their duties of loyalty or care are subject to stringent pleading requirements not met in this case.  In particular, in instances such as this in which a corporation has exculpated its directors from liability for an alleged breach of the duty of care, a plaintiff must plead facts establishing bad faith or deliberate and knowing misconduct as to *each defendant* they wish to hold liable.  Even absent such exculpation, plaintiffs must overcome the strong business judgment presumption by alleging facts establishing that corporate directors and officers were "grossly negligent," meaning that they acted with "reckless indifference" to the company and its body of shareholders.  Here, Plaintiffs have alleged no facts evidencing that Mr. Dahlberg acted negligently with respect to any matter during his tenure as SAIC's lead officer and director, let alone in bad faith or recklessly with respect to the CityTime project.  That omission requires dismissal of the core breach of fiduciary duty claims alleged in the Complaint.  The other state law claims and lone federal claim suffer from equally fatal infirmities.  Accordingly, all claims against Mr. Dahlberg must be dismissed.

As a threshold matter, we note that the Complaint also must be dismissed for insufficient service under Fed. R. Civ. P. 12(b)(5), because plaintiffs failed to serve Mr. Dahlberg within 120 days of filing suit.  *See* Fed. R. Civ. P. 4(m).  Indeed, Lead Plaintiff Welch filed his complaint and obtained a summons for Mr. Dahlberg on April 2, 2012, but Plaintiffs by their own admission failed to serve Mr. Dahlberg until August 15, 2012—*136 days after the lawsuit was filed*.  *See* Proof of Service of Summons and Complaint on Defendant Kenneth C. Dahlberg, Sept. 12, 2012, Dkt. No. 24.[1]

---

[1] The Court may consider matters outside the complaint on a motion to dismiss for insufficient service under Rule 12(b)(5).  *See Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012).

## BACKGROUND

SAIC, a Delaware corporation provides defense, intelligence, homeland security, logistics and other solutions to federal and state governments and commercial enterprises. (Compl. ¶¶ 2, 35.)  SAIC has more than 43,000 employees worldwide.  (*See* October 25, 2012 Declaration of Lloyd Winawer ("Winawer Decl.") Ex. A, SAIC 2011 Annual Report (Form 10-K), at 7 (Mar. 25, 2011).) [2]  Between 2003 and 2011, SAIC's annual revenues ranged from $4.8 billion to $11.1 billion.  (Winawer Decl. Ex. B, SAIC 2007 Annual Report (Form 10-K), at 29 (table) (Apr. 12, 2007); Winawer Decl. Ex. A, SAIC 2011 Annual Report (Form 10-K), at 24 (table) (Mar. 25, 2011).)  Historically, the overwhelming bulk of those revenues were derived from contracts with the United States government (on average, approximately 90% during the Relevant Period); only a small fraction resulted from contracts with state or local governments (e.g., approximately 2% in FY 2012).[3]

Kenneth Dahlberg served as SAIC's Chief Executive Officer ("CEO") from November 2003 until September 2009, and Chairman of the Board of Directors from July 2004 until June 2010.  (Compl. ¶ 50; *see also* Winawer Decl. Ex. G, SAIC 2010 Annual Report (Form 10-K), at 18, (March 31, 2010)).)  Mr. Dahlberg's planned retirement as CEO was pre-announced on June 23, 2009.  (*Id.* ¶ 131.)

---

[2] This Court may, of course, consider documents incorporated by reference or that are relied on and integral to the Complaint and may also take judicial notice of documents publicly filed with the Securities Exchange Commission. *See, e.g., In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011); *Garber v. Legg Mason, Inc*., 537 F. Supp. 2d 597, 60 n.1 (S.D.N.Y. 2008).  When documents contain statements that contradict allegations in a complaint, the documents control and the court need not accept as true the allegations in the complaint.  *BH S & B Holdings*, 420 B.R. 112, 132 (Bankr. S.D.N.Y. 2009).

[3] *See, e.g.*, Winawer Decl. Ex. C, SAIC 2005 Annual Report (Form 10-K), at 9 (Apr. 1, 2005); Winawer Decl. Ex. D, SAIC 2008 Annual Report (Form 10-K), at 4 (Mar. 25, 2008); Winawer Decl. Ex. E, SAIC 2009 Annual Report (Form 10-K), at 4 (Mar. 27, 2009); Winawer Decl. Ex. F, SAIC 2012 Annual Report (Form 10-K), at F-39 (Mar. 27, 2012); SAIC Corporate Fact Sheet, http://www.saic.com/news/pdf/corporatefactsheet.pdf (last visited Oct. 25, 2012)*.*

All of Plaintiffs' claims in this case are based on SAIC's "CityTime" contract, pursuant to which SAIC served as the lead contractor on a project to modernize New York City timekeeping and payroll systems.  SAIC's involvement with CityTime dates back to 2001, two years before Mr. Dahlberg joined the Company.  (*Id.* ¶¶ 2-3.)  The CityTime agreement was one of thousands of active contracts to which SAIC is a party at any given point.[4]  The scope of the CityTime contract was significantly expanded over time.  According to one article quoted in the Complaint, the CityTime contract was "amended eight times since 1998 to include more municipal agencies and keep pace with technological advances." (*Id.* ¶ 113.)  The contract was completed in 2011 and covers more than 163,000 employees.  (*Id.* ¶ 162.)

Ten individuals, including two SAIC employees with day-to-day responsibilities for the CityTime project, and one subcontractor have been charged with criminal conduct in connection with the performance of the CityTime contract.  As alleged in the Complaint (and referenced criminal complaints), SAIC's CityTime program manager (Gerald Denault) and chief engineer (Carl Bell) conspired with subcontractor Technodyne LLC and New York City Office of Payroll ("OPA") personnel to fraudulently bill the City.  (Compl. ¶¶ 12, 73-85.)  The indictment against a former OPA employee details his allegedly fraudulent approval of work performed by various project consultants.  The indictments describe the elaborate steps taken by the co-conspirators to conceal their scheme, including Technodyne's transfer of funds to bank accounts and affiliates in India for the purpose of secretly funneling to Denault and Bell over $14 million in kickbacks.  (*Id.* ¶¶ 77(b)-(c), 156.)

In March 2012, SAIC entered into a Deferred Prosecution Agreement ("DPA") related to CityTime, pursuant to which it agreed to pay approximately $500 million in restitution and

---

[4] For example, SAIC had a portfolio of approximately 9,000 active contracts as of July 31, 2006.  (Winawer Decl. Ex. H, SAIC, Amendment No. 5 to Form S-1, at 75 (Sept. 29, 2006).)

penalties.  (*Id.* ¶ 23.)  In a Statement of Responsibility ("SOR") that was part of the DPA, SAIC acknowledged (1) responsibility "for the illegal conduct alleged against Denault and admitted by Bell during the course of the CityTime project[,]" and (2) that certain "management employees responsible for ***directly*** overseeing Denault and the Company's performance of the CityTime contract" failed to perform satisfactorily their supervisory responsibilities in accordance with Company standards.  (Compl. ¶ 89 (emphasis added).)

Nothing in the DPA or related SOR suggests that Mr. Dahlberg, SAIC's most senior official, knew or even had reason to suspect that two lower level employees with day-to-day responsibility for one of the thousands of ongoing Company projects were taking bribes and engaging in fraudulent billing practices in complicity with others outside the Company, including New York City employees.  The SOR, upon which Plaintiffs extensively rely, actually refutes any such contention or inference.  For example, the SOR states that an anonymous 2005 complaint "***was not brought to the attention of SAIC's Board of Directors***."  (*Id.* (emphasis added).)  It also states that certain managers who supervised Denault "***failed to pass on . . . concerns to the proper Company personnel for investigation***."  (*Id.* (emphasis added).)  The SOR makes clear that, when senior Company officials were advised of the Government's investigation, SAIC responded "as a responsible and concerned corporate citizen" and "terminated the employment of the managers who ***directly*** supervised Denault and the Project for their failures in connection with CityTime."  (*Id.* (emphasis added).)

Rather than allege facts to support their implausible contention that Mr. Dahlberg (or any other SAIC director) deliberately or recklessly sanctioned the payment of bribes to two lower level SAIC employees, Plaintiffs merely identify the dates of Mr. Dahlberg's positions with SAIC, the SEC Form 10-K filings he signed, and his compensation.  (Compl. ¶¶ 50, 91, 93, 95, 97, 111, 123, 140.)  Plaintiffs allege generally that SAIC's SEC filings (including the

certifications that Mr. Dahlberg and chief financial officer, Mark Sopp, were required to sign under the Sarbanes-Oxley Act of 2002 ("SOX")) were rendered false by the failure to disclose Denault and Bell's alleged scheme.

Without differentiation, Plaintiffs allege that "[e]very member of the Board was aware of, or should have been aware of, numerous red flags regarding the Company's illicit practices in connection with government contracts and, in particular, the overbilling of the CityTime contract." (Compl. ¶ 211.c.) The so-called "red flags" consist of the following: (1) contract amendments, costs, and staffing; (2) various news articles; and (3) alleged issues with unrelated other projects. (Compl. ¶¶ 7, 26, 27, 108, 134, 155-56, 177, 184, 185, 211.) Based on these allegations, Plaintiffs assert claims against all defendants for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and violations of Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"). (*Id*. ¶¶ 212-45.)

## ARGUMENT

A motion to dismiss must be granted where the complaint fails "to state a claim upon which relief can be granted" and fails to allege any set of facts to "plausibly" support entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-62 (2007) (complaint must be dismissed if plaintiff fails to allege a "set of facts" bringing the allegations across the line between the mere "possibility" of relief to "plausibility"); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

For claims sounding in fraud or mistake, such as the claims here for breach of fiduciary duty based on alleged misstatements or misrepresentations, Plaintiffs must satisfy Rule 9(b)'s heightened requirements.  *See Marino v. Groupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 606 (S.D.N.Y. 2011).  For claims under § 14(a) of the Securities Exchange Act, the Complaint must also satisfy the Private Securities Litigation Reform Act's heightened pleading standard. *See In re Bank of Am. Corp. Sec. Deriv. and ERISA Litig.*, 757 F. Supp. 2d 260, 289 (S.D.N.Y. 2010).

Finally, the "internal affairs doctrine" requires the application of Delaware law to the state law causes of action that Plaintiffs have purported to assert on behalf of SAIC, a Delaware corporation, against the Company's current and former directors and officers.  *See Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 424 B.R. 95, 100 (Bankr. S.D.N.Y. 2010) ("Under New York choice-of-law principles, the state of incorporation governs the scope of the fiduciary duties owed by a corporation's directors and officers."); *see also* Director Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("Director Defs' Mem.") at 6.

## I.     PLAINTIFFS HAVE NOT STATED BREACH OF DUTY CLAIMS AGAINST MR. DAHLBERG

### A.     Plaintiffs Have Pleaded No Facts Establishing that Mr. Dahlberg Deliberately or Recklessly Made a Materially False Statement (Count I).

Plaintiffs allege first that Mr. Dahlberg breached his fiduciary duties by "causing or allowing the Company to disseminate to SAIC shareholders materially misleading and inaccurate information through … SEC filings, press releases, conference calls, and other public statements and disclosures[.]" (Compl. ¶ 214.)  Plaintiffs have alleged no facts to support this claim.

Delaware law imposes two fundamental duties on corporate directors and officers:  the duty of loyalty and the duty of care.[5]  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  As the Director Defendants have shown, SAIC's Certificate of Incorporation in accordance with Delaware law exculpates current or former Company directors, such as Mr. Dahlberg, from personal liability for alleged duty of care breaches.[6]  Director Defs' Mem. at 7; *see Malpiede v. Townson*, 780 A.2d 1075, 1090-96, 1101 (Del. 2001) (affirming dismissal of duty of care claim under Delaware General Corporation Law § 102(b)(7)).  Where, as here, claims for director breach of the duty of care based on allegedly false disclosures are exculpated, a complaint must "support the inference that the disclosure violation was made in bad faith, knowingly or intentionally."  *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 132 (Del. Ch. 2009) (citation omitted).  Delaware law thus imposes "a very high bar" for such claims; the standard is "similar to, but even more stringent than, the level of scienter required for common law fraud."  *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 157-58 (Del. Ch. 2004) (citations omitted).

To the extent that Plaintiffs were able to establish that SAIC's exculpatory provision does not apply to a particular statement made by Mr. Dahlberg—an allegation not present in Plaintiffs' Complaint—Plaintiffs still would have to "overcome the presumption, known as the business judgment rule, that [he] acted on an informed basis and in the honest belief [he] acted in the best interest of the corporation."  *In re BH S & B Holdings LLC*, 420 B.R. 112, 146 (Bankr.

---

[5] The duty of good faith, referenced throughout the Complaint, is not an independent fiduciary duty, but instead is encompassed by the duty of loyalty.  *See Stone*, 911 A.2d at 370.

[6] Mr. Dahlberg served SAIC as an officer and director from November 2003 through September 2009 and thereafter only as a director until June 2010.  Delaware law provides that individuals who serve in a dual capacity as officers and directors may rely on the exculpatory protections of Delaware law except for "those actions taken *solely* in the defendant's capacity as an officer[.]"  *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1288 (Del. 1994) (emphasis added); *see also In re Celera Corp. S'holder Litig.*, C.A. No. 6304-VCP, 2012 WL 1020471, at *27 n.191 (Del. Ch. Mar. 23, 2012); *THC Holdings Corp. v. Chinn*, No. 95 CIV. 4422 (KMW), 1998 WL 50202, at *8 (S.D.N.Y. Feb. 6, 1998).

S.D.N.Y. 2009) (citations omitted).  Delaware courts have characterized this "'as a near-Herculean task.'"  *Id*. at 147 (citation omitted).  To satisfy this requirement, Plaintiffs must allege facts establishing "gross negligence[.]"  *In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig*., 757 F. Supp. 2d at 338 (quoting *In re Lear Corp. S'holder Litig*., 967 A.2d 640, 651 (Del. Ch. 2008)).  Mere ordinary negligence does not suffice; Plaintiffs must allege facts demonstrating that Mr. Dahlberg acted with "'reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason.'"  *Id*. (quoting *Tomczak v. Morton Thiokol, Inc*., CIV. A. No. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990)).  This standard is "extremely stringent."  *In re Lear Corp*., 967 A.2d at 652.

Plaintiffs simply fail to allege facts sufficient to demonstrate that Mr. Dahlberg deliberately or recklessly made any false representation.  Plaintiffs allege that Mr. Dahlberg signed Form 10-Ks for fiscal years 2004 through 2010 (ended January 31) and that each of those filings falsely represented that "[t]he preparation of these [the Company's] financial statements in accordance with GAAP requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and the disclosure of contingencies" and that "[m]anagement evaluates these estimates and assumptions on an ongoing basis" based on "the most current reasonably available information."  (Compl. ¶ 92; *see also id*. ¶¶ 94, 96, 98, 111, 124, 140.)  There are no allegations that GAAP did not require such estimates and assumptions.  Rather, Plaintiffs' principal allegations are that these statements were false because "as a result of SAIC's known, but undisclosed, overbilling practices, its operating results during the Relevant Period were materially misstated" and "the Company's financial statements were not fairly presented in conformity with GAAP."  (*Id*. ¶ 145(b), (e).)  These allegations are mere conclusions, which do not satisfy Rule 8, much less Rule 9(b)'s heightened pleading requirements.

Of particular significance, Plaintiffs do not indicate what information was available to, and known by, Mr. Dahlberg at the time of each SEC filing that undermined the challenged statements.  For example, with respect to the 2005-2007 time period, Plaintiffs allege merely that "staffing on the CityTime project expanded dramatically" and that the number of consultants working on the project "doubled, to more than 300—the vast majority of whom were hired and paid via SAIC's subcontract with Technodyne."  (*Id*. ¶¶ 82, 83.)  There is nothing remotely unusual or suspicious about staffing increases on a project (particularly if the scope of the project was expanding as alleged in the Complaint) or the use of contractors; this allegation therefore provides no basis for calling into question the management estimates and assumptions underlying SAIC's financial statements.[7]  The same applies to the various news articles that Plaintiffs cite in the Complaint, none of which asserts or even intimates that two SAIC employees were in cahoots with subcontractors and OPA personnel to fraudulently overbill New York City.  (*See* Compl. ¶¶ 109, 112, 113, 134, 137.[8])

Also infirm are Plaintiffs' disclosure claims based on the SOX Certifications that Mr. Dahlberg signed between 2004 and 2009.  (*Id*. ¶¶ 91, 93, 95, 97, 111, 123.)  As required, those Certifications addressed the evaluation and design of SAIC's disclosure and internal controls over financial reporting and stated that based on Mr. Dahlberg's knowledge, SAIC's Form 10-Ks did not contain material misrepresentations or omissions.  (*See id*. ¶ 91.)  Again, Plaintiffs have pleaded no facts establishing that Mr. Dahlberg failed to conduct the required evaluation of

---

[7] Plaintiffs also allege that issues with a smattering of SAIC projects at various points in time also served as "red flags."  (Compl. ¶ 184.)  As discussed in both SAIC's and the Director Defendants' memoranda, however, Plaintiffs draw no connection between those projects and CityTime or explain how the alleged issues possibly could have provided Mr. Dahlberg (and SAIC's other directors and senior officers) with notice of Messrs. Denault and Bell's alleged CityTime conduct.  Nominal Defendant SAIC, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss the Complaint, a t 14-17; Director Defs' Mem. at 15-19.

[8] The last Form 10-K that Mr. Dahlberg allegedly signed (the 2010 10-K) was filed on April 1, 2010.  (Compl. ¶ 140.)  Thus, any of the alleged news articles published after that date provide no basis for the disclosure claim alleged against Mr. Dahlberg.

10

SAIC's disclosure and internal controls, misrepresented the results of those evaluations, or had knowledge of material misrepresentations or omissions.

Plaintiffs cite three 2008 articles that they characterize as "red flags." (*Id.* ¶¶ 109, 112, 113.) Given their timing, these articles provide no basis for challenging SOX Certifications before 2008. The first article allegedly appeared on March 2, 2008—a few weeks before the filing of SAIC's 2008 Form 10-K (and accompanying certifications) on March 25, 2008, but that article merely referred to the increased cost of the CityTime project and issues with a few other SAIC projects. (*See id.* ¶ 109.) The same can be said for the only two other articles alleged to have issued before Mr. Dahlberg signed his last SOX Certification on March 27, 2009. (*See id.* ¶¶ 112-13.) Moreover, separate and apart from their content, nothing in the Complaint indicates that any of these articles were even brought to Mr. Dahlberg's attention. Notably, two of the three articles that allegedly predated the 2009 10-K were published by *CityLimits*, a non-profit organization "committed to telling the stories of neighborhoods and people overlooked by the mainstream media." *See CityLimits*, http://www.citylimits.org/about_us/faq.cfm (last visited Oct. 25, 2012).[9]

Finally, Plaintiffs cite SAIC's 2009 Annual Report, which included a letter from Mr. Dahlberg that, among other topics, addressed SAIC's commitment "to the highest standards" and referenced honors and awards that the Company had recently received. (*Id.* ¶ 25.) The 2009 Report later stated that "[i]ntegrity and high ethical standards comprise a core value at SAIC" and that "Ken Dahlberg reiterated SAIC's 'zero tolerance' policy on unethical behavior and

---

[9] Significantly, Plaintiffs do not allege that the supposed "red flags" were visible only to SAIC executives such as Mr. Dahlberg but rather were ***publicly*** available. Plaintiffs cannot have it both ways. As shown in the Director Defendants' Memorandum, if Plaintiffs actually contend that the referenced 2008 articles revealed fraudulent conduct in connection with CityTime, then Plaintiffs as well would have been on notice of the allegations now in the Complaint, thus bringing their present breach of fiduciary duty claims outside of Delaware's three-year statute of limitations. Director Defs' Mem. at 19-20*; see U.S. Cellular Inv. Co. v. Bell Atl. Mobile Sys., Inc.* 677 A.2d 497, 503-04 (Del. 1996).

directed SAIC's managers to make clear to employees that it is a policy that applies from top to bottom." (*Id.* ¶ 26.)  Nothing alleged in the Complaint indicates that Mr. Dahlberg failed to issue this directive or that SAIC did not value integrity and ethics.  The clandestine acts of two allegedly bad apples out 41,000 total employees alleged in the Complaint do not render these statements false when made, particularly given SAIC's response "as a responsible and concerned corporate citizen" when their alleged conduct was brought to light.

Plaintiffs also disingenuously allege that the 2009 Annual Report "touted the CityTime contract . . . as an example of the Company's top quality work." (Compl. ¶ 127.)  It did no such thing.  After addressing several other projects and initiatives, two short paragraphs on page 23 of the 30 page report simply described the scope of the project and its development, stating that the project was "designed to eventually standardize operations for 80 agencies and more than 165,000 employees" and had "been rolled out to 42 agencies and more than 27,000 users to date . . . ." (Compl. ¶ 127 (quoting 2009 Annual Report, at 23).)  Nothing in the Complaint suggests these statements were false.[10]

In sum, Plaintiffs have not alleged a single fact that renders any challenged statement by Mr. Dahlberg false when made, let alone any fact indicating that Mr. Dahlberg knowingly or recklessly made any such statement.  Plaintiffs' disclosure claim therefore must be dismissed.

---

[10] Plaintiffs also reference various earnings releases and Form 10-Qs issued by SAIC during the Relevant Period. (Compl. ¶¶ 101-102, 103-104, 106-107, 114-115, 117-118, 120-122, 128-129, 132, 135-136, 139-140, 142-145.) The Complaint lacks any allegations related to Mr. Dahlberg's role in preparing, signing, or otherwise authorizing these disclosures.  Moreover, Plaintiffs fail to plead facts demonstrating that any statement in these documents was false when made for the same reasons that they have failed to make such a showing with respect to the other statements alleged in the Complaint.

### B. Plaintiffs Fail to State Breach of Fiduciary Duty Claims Against Mr. Dahlberg for Failure to Maintain Internal Controls and Exercise Proper Oversight (Counts II and III).

Plaintiffs also allege that Mr. Dahlberg breached his fiduciary duties by failing to properly oversee SAIC's business operations and disregarding "obvious" internal control deficiencies.  (Compl. ¶¶ 218, 220-25.)  Delaware courts repeatedly have made clear that these types of *Caremark* claims are "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009).  To avoid dismissal, Plaintiffs must allege facts demonstrating either that Mr. Dahlberg (and SAIC's other directors) (a) "'utterly failed to implement any reporting or information system or controls, *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring attention.'"  *In re Citigroup*, 964 A.2d at 123 (quoting *Stone*, 911 A.2d at 370).  Put simply, Plaintiffs must show that SAIC's "directors were conscious of the fact that they were not doing their jobs."  *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003); *see also Stone*, 911 A.2d at 369; *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007).  Nowhere do Plaintiffs demonstrate that Mr. Dahlberg (or any other SAIC director) failed to monitor reporting systems and controls or otherwise acted in bad faith.

Plaintiffs do not allege that SAIC failed to implement reporting systems or controls.  *See In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502, 512-13 (S.D.N.Y. 2008) (citing plaintiffs' failure to allege with sufficient particularity that "Defendants failed to implement reporting or information systems and controls.").  Rather, Plaintiffs' claims are based on their allegation that Defendants "willfully ignored the obvious and pervasive problems with SAIC's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or

prevent their recurrence." (Compl. ¶ 218.) Plaintiffs "must allege that facts which come to [Mr. Dahlberg's] attention would place a reasonable party in [Mr. Dahlberg's] position on notice of wrongdoing." *Stephenson v. Citco Group Ltd.*, 700 F. Supp. 2d 599, 622 (S.D.N.Y. 2010). Plaintiffs identify no internal control deficiencies, let alone deficiencies that were responsible for SAIC's failure to detect the alleged CityTime transgressions *and* were brought to Mr. Dahlberg's attention *and* deliberately not acted upon. "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone*, 924 A.2d at 940.

Plaintiffs rely on the bald allegation that "[e]very member of the Board was aware of, or should have been aware of, numerous red flags regarding the Company's illicit practices in connection with government contracts and, in particular, the overbilling of the CityTime contract." (Compl. ¶ 211.) This is precisely what *Caremark* forbids. As discussed above in connection with Plaintiffs' disclosure claim (*supra* at 7-12) and addressed in detail in the Director Defendants' Memorandum (Director Defs' Mem. at 15-19), nothing about those practices constitute "red flags." In sum, Plaintiffs have pointed to nothing that suggests that Mr. Dahlberg consciously failed to monitor SAIC's internal controls and deliberately turned a blind eye to information that revealed the alleged CityTime improprieties. As courts have observed on numerous occasions, "flags are not red merely because the plaintiff calls them red." *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 573 (S.D.N.Y. 2011); *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 487 (S.D.N.Y. 2006). That is precisely the case here.

As shown above, the publicly available information upon which Plaintiffs extensively rely attests to the secretive conduct in which the alleged CityTime conspirators engaged and the critical participation of non-SAIC parties that evidently was essential to the perpetration of the

alleged scheme.  (*See supra* at 4-5.)  In addition, SAIC has acknowledged that certain employees who were directly responsible for supervising the CityTime project failed to forward information up the chain of command for investigation.  (*See supra* at 4-5.)  Mr. Dahlberg obviously could not have consciously disregarded information that never reached his desk.

Plaintiffs' claims thus are based on speculative inferences and sheer hindsight.  As courts have held, however, "[t]he magnitude and duration of illegal activities or the size of the resulting penalties … do not establish either deficient controls or a sustained and systematic conscious failure of oversight." *ITT Corp.*, 588 F. Supp. 2d at 514.  Ultimately, "[i]t is not enough 'with the benefit of hindsight' that it is revealed that internal controls were inadequate and resulted in a large fine." *King v. Baldino*, 648 F. Supp. 2d 609, 623 (D. Del. 2009).  Because Plaintiffs have alleged no more here, their breach of fiduciary duty claims against Mr. Dahlberg must be dismissed.

## II.    PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL (COUNTS IV-VI)

Plaintiffs assert additional common law counts for variants of the breach of fiduciary duty claims—unjust enrichment (Count IV), abuse of control (Count V), and gross mismanagement (Count VI).  Courts routinely reject such transparent attempts by plaintiffs to convert legally insufficient breach of fiduciary duty claims into alternative causes of action.  *See, e.g.*, *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) ("Each 'additional' claim (abuse of control, gross mismanagement, and waste of corporate assets) is premised on the defendants' alleged breach of their fiduciary duties"); *Richardson v. U.S. News & World Report, Inc.*, 639 F. Supp. 595, 609 (D.D.C. 1986) (granting summary judgment on unjust enrichment claim which was "no more than a restatement" of common-law and securities fraud claims).

Plaintiffs' unjust enrichment claim fails for several reasons.  To state such a claim under Delaware law, Plaintiffs must allege "(1) an enrichment, (2) an impoverishment, (3) a relation

between the enrichment and the impoverishment, (4) the absence of justification and (5) the absence of a remedy provided at law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (citations omitted).  Plaintiffs fail to satisfy any of these elements.

As a threshold matter, Plaintiffs unjust enrichment claim against Mr. Dahlberg cannot stand because Plaintiffs have failed to allege the absence of a legal remedy by establishing the lack of a formal, enforceable contract between SAIC and Mr. Dahlberg.  It is well settled that unjust enrichment claims will be dismissed whenever the Court determines that an express contract controls the dispute at issue.  *See MCG Capital Corp. v. Maginn*, No. 4521-CC, 2010 WL 1782271, at *24 (Del. Ch. May 5, 2010) (stating that unjust enrichment is a theory of recovery to remedy the absence of a formal contract and that "'[c]laims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain'" (citation omitted)).  Here, Plaintiffs ignore the existence of an express contract between SAIC and Mr. Dahlberg.  (Winawer Decl. Ex. I, SAIC 2003 Q3 Form 10-Q, Exhibits 10.1 and 10.2 (Dec. 12, 2003).)

Plaintiffs also have pleaded no facts demonstrating that Mr. Dahlberg was unlawfully "enriched" at SAIC's expense.  Rather, the Complaint asserts patently insufficient conclusions that Mr. Dahlberg improperly was "overcompensated."  (Compl. ¶ 205.)  As one court in this District recently found when applying Delaware law, "[g]iven the lack of non-conclusory allegations that defendants' compensation was profligate or was paid for an improper purpose, the allegations of unjust enrichment fail to 'state a claim to relief that is plausible on its face.'" *In re Pfizer Inc. S'holder Litig.*, 722 F. Supp. 2d 453, 466 (S.D.N.Y. 2010) (citation omitted).  The same holds true here.

In addition, Plaintiffs have failed to establish any nexus between Mr. Dahlberg's compensation and the alleged CityTime scheme upon which their Complaint is predicated.

Plaintiffs do not plead any facts indicating that Mr. Dahlberg received any financial benefit from the CityTime project or how, if at all, it impacted his compensation.  Put simply, Plaintiffs have alleged nothing indicating that the challenged payments to Mr. Dahlberg impermissibly exceeded the value of his services to the Company, as Chief Executive Officer and Chairman of the Board.

Plaintiffs' abuse of control claim cannot survive as a stand-alone claim because courts treat abuse of control as a claim for breach of the duty of loyalty.  *See City of Roseville Emps.' Ret. Sys. v. Crain*, No. 11-2919 (JLL), 2011 WL 5042061, at *12 (D.N.J. Oct. 24, 2011) (dismissing abuse of control/duty of loyalty claim and stating that Delaware courts categorize abuse of control as a breach of directors' duty of loyalty) (citing *In re ALH Holdings, LLC*, 675 F. Supp. 2d 462, 482–83 (D. Del. 2009) (categorizing abuse of control as a breach of directors' duty of loyalty)).  As set forth above, there are no allegations to support a breach of the duty of loyalty claim against Mr. Dahlberg.

Finally, Plaintiffs' gross mismanagement claim cannot stand because "Delaware law does not recognize an independent cause of action against corporate directors and officers for reckless and gross mismanagement; such claims are treated as claims for breach of fiduciary duty."  *In re Citigroup*, 964 A.2d at 115 n.6.  Indeed, Delaware common law fiduciary duty standards "govern the duties that directors and officers owe the corporation as well as claims such as those for 'reckless and gross mismanagement,' even if those claims are asserted separate and apart from claims of breach of fiduciary duty."  *Id.* (citing M*etro Commc'n Corp. BVI,* 854 A.2d at 155–57; *Albert v. Alex. Brown Mgmt. Servs., Inc*., No. C.A. 04C-05-250 PLA, C.A. 04C-05-251 PLA, 2004 WL 2050527, at *6 (Del. Super. Ct. Sept. 15, 2004) ("[A] claim that a corporate manager acted with gross negligence is the same as a claim that she breached her fiduciary duty of care.")).

## III.   PLAINTIFFS HAVE NOT STATED A CLAIM UNDER SECTION 14(a) OF THE EXCHANGE ACT (COUNT VII)

Plaintiffs allege that three SAIC proxy statements—filed on April 29, 2009, April 29, 2010, and April 27, 2011—contained "materially false and misleading statements in the Audit Committee Report."  (Compl. ¶ 241.)  Specifically, Plaintiffs claim that statements related to the Audit Committee's discussions and review of the Company's internal controls with its auditors—Deloitte & Touche LLP—were false and misleading.  (*Id.* ¶ 242.)  Given that the Complaint fails to allege any unique facts related to Mr. Dahlberg in connection with these claims, Mr. Dahlberg adopts and incorporates by reference the arguments in support of dismissal of the Section 14(a) claims as set forth in the Director Defendants' brief.  *See* Director Defs' Mem. at 29-35.  In addition, no Section 14(a) claim against Mr. Dahlberg may be predicated on the April 27, 2011 Proxy because it issued ten months after Mr. Dahlberg stepped down as Chairman of the Board.  (Compl. ¶ 50.)

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Kenneth C. Dahlberg respectfully requests that this Court dismiss with prejudice the Complaint against him in its entirety.


Dated: October 25, 2012                                  Respectfully submitted,

                                                          /s/Lloyd Winawer
                                                          Lloyd Winawer
                                                          GOODWIN PROCTER LLP
                                                          135 Commonwealth Drive
                                                          Menlo Park, CA 94025
                                                          Tel:  (650) 752-3100
                                                          Fax:  (650) 853-1038
                                                          lwinawer@goodwinprocter.com

Mark Holland
Mary K. Dulka
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 813-8800
Fax:  (212) 355-3333
mholland@goodwinprocter.com
mdulka@goodwinprocter.com

*Attorneys for Defendant Kenneth C.
Dahlberg*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2012, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.


*/s/ Lloyd Winawer*
Lloyd Winawer